IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| BRANDON JAMES, #290234, ) | Civil Action No. 3:08-664-HFF-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA DEPARTMENT OF ) | |
| CORRECTIONS; TURBEVILLE ) | |
| CORRECTIONAL INSTITUTION; AND ) | |
| LT. LEE PACK, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action was filed by the pro se Plaintiff on February 27, 2008.[1] At the time of the alleged incidents, he was an inmate at the Turbeville Correctional Institution ("TCI") of the South Carolina Department of Corrections ("SCDC"). He is currently an inmate at the Lee Correctional Institution of the SCDC. Defendants are SCDC, TCI, and SCDC employee Lt. Lee Pack ("Pack"). Defendants filed a motion for summary judgment on October 17, 2008. Plaintiff, because he is proceeding pro se, was advised on October 20, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff did not respond to the Roseboro order. The undersigned filed a second order on December 24, 2008, allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

action. On December 31, 2008, Plaintiff filed a response in opposition to Defendants' motion for summary judgment.

## MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that Defendants used excessive force against him and that he was not seen by medical personnel after the incident. He requests monetary damages. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff failed to exhaust his available administrative remedies;[2] (2) Defendants are entitled to Eleventh Amendment immunity; and (3) Defendant Pack is entitled to qualified immunity.

1. Eleventh Amendment Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the

---

[2]"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

Defendants appear to argue that Plaintiff has not exhausted all of his available administrative remedies because he did not appeal the denial of his Step 1 and 2 grievances concerning the alleged incidents to the South Carolina Administrative Law Division. The fact that the South Carolina Legislature made a court available to prisoners who wanted to appeal a final decision by a jail facility denying a grievance does not alter the federal PLRA by extending its administrative exhaustion requirements to include exhaustion in all state judicial forums. In § 1983 matters, Congress only intended that "administrative remedies" be satisfied. See e.g., Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)(exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court), cert. denied, 437 U.S. 949 (2002); Brown v. Evans Corr. Inst. Med. Staff, 2007 WL 1290359, at *4 (D.S.C. April 30, 2007).

United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

2.    Qualified Immunity

Defendant Pack contends that he is entitled to qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The analysis of the defense of qualified immunity is generally examined using

a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001).[3] The first step is to determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants' conduct violated a constitutional right. Id. at 201. If the facts, so viewed, do not establish a violation of a constitutional right, the plaintiff cannot prevail, and "there is no necessity for further inquiries concerning qualified immunity." Id. If, however, a favorable view of the facts does establish such a violation, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. Id. If the right was not clearly established, the defendants are entitled to qualified immunity. Id.

Here, Plaintiff fails, in the light most favorable to him, to show that Defendant Pack's conduct violated any of his constitutional rights, as discussed further below.[4] Thus, Defendant Pack is entitled to qualified immunity.

Plaintiff appears to allege that he was subjected to excessive force on September 1, 2007. He claims that Sgt. Harrell administered a burst of MK-9 Top Cop into his cell because his roommate

---

[3]The Supreme Court has clarified that these steps do not need to be taken in the sequence set forth in Saucier, and that
> [t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand.

Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808, 815 (2009).

[4]It is unclear whether Plaintiff is attempting to assert a claim for medical deliberate indifference. Lt. Pack states that Plaintiff was taken to see a nurse after the incident. Joe Altman, Sr., a Licensed Practical Nurse for SCDC, states that Plaintiff was brought to medical, Plaintiff refused any treatment, and Plaintiff did not seek any further treatment concerning the alleged use of force incident. Altman Aff., Paras. 5-6. In his opposition memorandum, Plaintiff disputes that he saw Altman after the use of force incident. Altman, however, merely stated that Plaintiff was brought to medical and Plaintiff refused treatment. Further, Plaintiff fails to show any constitutional violation as he has not shown that he had any serious medical need to which Defendants were deliberately indifferent. See Estelle v. Gamble, 429 U.S. 97 (1976)

was kicking at the cell door and refused to stop after being ordered to do so three times. Plaintiff and his roommate were then escorted to the showers. While being brought back to his cell, Plaintiff's roommate "took out running." Plaintiff states that he was in handcuffs and stopped, at which time Sgt. Harrell threw him against a wall, causing Plaintiff to bump his forehead on the wall. He claims that while being restrained, Lt. Pack sprayed him in the face with the MK-9 and he was thrown to the ground. Next, Plaintiff was escorted back to the shower. He claims that Lt. Pack again sprayed him with the MK-9. Afterwards, Sgt. Walker removed Plaintiff's handcuffs and let Plaintiff take a shower. Plaintiff claims that he "never got a chance to see medical." Complaint at 3-4.

Determination of whether cruel and unusual punishment has been inflicted on a prisoner in violation of the Eighth Amendment requires analysis of subjective and objective components. See Wilson v. Seiter, 501 U.S. 294, 302 (1991). First, the objective portion of an excessive force claim requires a prisoner to show that the injury inflicted was sufficiently serious. Although a plaintiff need not show a significant injury, see Hudson v. McMillian, 503 U.S. 1, 7 (1992), the Fourth Circuit, in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d at 1263. Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. See id. at 1262-63. With only de minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit has explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no,

5

> enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be "of a sort repugnant to the conscience of mankind," and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff fails to establish an Eighth Amendment claim because he alleges no more than de minimis injury.[5] Thus, any use of force by Defendant Pack was de minimis. See, e.g., Norman, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024; Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order of the inmate out of his cell and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell

---

[5] Defendants have analyzed Plaintiff's claims under the Fourteenth Amendment. Plaintiff, however, appears to have been a convicted inmate at the time of the alleged incidents such that his claims are properly analyzed under the Eighth Amendment. Under either the Eighth or Fourteenth Amendment, however, Plaintiff's claims fail as he has not alleged anything more than de minimis injury. See Riley v. Dorton; 115 F.3d 1159 (4th Cir. 1997), cert. denied, 520 U.S. 1030 (1997); Williams v. Dehay, 81 F.3d 153, 1996 WL 128422 (4th Cir. 1996)[Table](affirming summary judgment on a pretrial detainee's excessive force claim where the plaintiff showed no more than de minimis injury).

cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force); Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D. Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Coughlin, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992)[Table]; Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

Even if Plaintiff's injuries were more than de minimis, he fails to establish the subjective component of his excessive force case. Appropriate force may be used by prison officials when it is intended to maintain the discipline within a prison institution or to restore order. See Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986). When an inmate claims prison officials

used excessive force "he is forced to meet a higher standard (than deliberate indifference) to establish the subjective component." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The subjective portion of an excessive force claim requires a prisoner to demonstrate that officials inflicted force sadistically and maliciously for the sole purpose of causing harm. See Whitley, 475 U.S. at 320-21; Williams v. Benjamin, 77 F.3d at 761. The Supreme Court has directed that several factors should be balanced in determining whether prison officers acted maliciously and sadistically. These factors, originally set out in Whitley, include:

> (1) the need for the application of force,
>
> (2) the relationship between that need and the amount of force used,
>
> (3) the threat "reasonably perceived by the responsible officials," and
>
> (4) "any efforts made to temper the severity of a forceful response."

Hudson, 503 U.S. at 7 (citations omitted); see also Williams v. Benjamin, 77 F.3d at 762. The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. Hudson, 503 U.S. at 7.

Lt. Pack states that Plaintiff and other inmates became unruly and a first responder team (including Pack) was alerted. Upon his arrival on the scene, Lt. Pack observed a correctional officer struggling to subdue Plaintiff. There was a can of chemical munitions on the floor which was out of the reach of the correctional officer. Lt. Pack states that because he did not know if the correctional officer had used the chemical munitions successfully or if Plaintiff had knocked the can from the correctional officer's hand, he assessed the situation and determined it was appropriate to fire one round of chemical munitions in Plaintiff's direction. Pack Aff., Paras. 5-9. Plaintiff submitted a copy of an incident report in which Lt. Pack stated that he responded to a call and

observed a can of chemical munitions on the floor and a correctional officer struggling with Plaintiff. Pack wrote that he gave Plaintiff a directive to get on the floor, but Plaintiff refused. He stated that he administered a burst of the chemical munitions to Plaintiff's face and he and another correctional officer were able to get Plaintiff to the floor. Incident Report (attached to Plaintiff's Response in Opposition to Summary Judgment).

In this case, analysis of the factors set out in <u>Whitley</u> fails to show that Defendants acted maliciously and sadistically, and thus Plaintiff fails to establish an Eighth Amendment claim. As discussed above, Plaintiff fails to show more than de minimis injuries from the alleged incidents. Further, there was a threat reasonably perceived by Defendant Pack because of Plaintiff's refusal of direct orders and a need to gain control over Plaintiff.

## CONCLUSION

Based upon review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 23) be granted.

_____
Joseph R. McCrorey
United States Magistrate Judge

March 24, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).